## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CYNTHIA LOUISE MARTIN, | : | CIVIL NO.: 1:20-CV-01957 |
| | : | |
| Plaintiff, | : | (Magistrate Judge Schwab) |
| v. | : | |
| | : | |
| | : | |
| KILOLO KIJAKAZI,[1] | : | |
| Acting Commissioner of | : | |
| Social Security, | : | |
| | : | |
| Defendant. | : | |

## <u>MEMORANDUM OPINION</u>

### I. Introduction.

Cynthia Louise Martin ("Martin") seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her claim for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act (the "Act"). We have jurisdiction under 28 U.S.C. § 1331, 42 U.S.C. §§ 405(g)

---

[1] Kiolo Kijakazi is now the Commissioner of Social Security, and she is automatically substituted as the defendant in this action. *See* Fed. R. Civ. P. 25(d) (providing that when a public officer sued in his or her official capacity ceases to hold office while the action is pending, "[t]he officer's successor is automatically substituted as a party"); 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

and 1383(c)(3). Because the Commissioner's decision is supported by substantial evidence, the Court will affirm the Commissioner's decision.

## II. Background and Procedural History.

We refer to the transcript provided by the Commissioner. *See docs. 12-1 to 12-12.*[2] On February 16, 2018, Martin filed an application for Social Security disability benefits, alleging disability beginning March 2, 2016. *Admin. Tr.* at 10. Her claim was denied on August 9, 2018. *Id.* On September 13, 2018, Martin filed a written request for a hearing, which was held before Administrative Law Judge Howard Kauffman ("ALJ") on July 23, 2019. *Id.*

On August 16, 2019, the ALJ determined that Martin had not been disabled within the meaning of the Act from March 2, 2016 through the date of the decision. *Id.* at 20-21. And so, he denied her benefits. *Id.* Martin appealed the ALJ's decision to the Appeals Council, which denied his request for review on September 28, 2020. *Doc. 1* at 3. This makes the ALJ's decision the final decision of the Commissioner subject to judicial review by this Court.

On October 23, 2020, Martin began this action by filing a complaint claiming that the Commissioner's decision is not supported by substantial

---

[2] The facts of the case are well known to the parties and will not be repeated here. Instead, we will recite only those facts that bear on Martin's claims.

evidence. *Doc. 1* at 6.  Martin requests that the Court find that he is entitled to Social Security benefits or remand the case for a further hearing. *Id.* at 7.  The Commissioner filed an answer to the complaint and a transcript of the proceedings that occurred before the Social Security Administration. *Docs. 11-12*.  The parties consented to proceed before a magistrate judge pursuant to 28 U.S.C. § 636(c), and the case was referred to the undersigned. *Doc. 10*.  The parties then filed their respective briefs, *see docs. 13, 14*, and this matter is ripe for decision.

## III.  Legal Standards.

### A. Substantial Evidence Review—the Role of This Court.

When reviewing the Commissioner's final decision denying a claimant's application for benefits, "the court has plenary review of all legal issues decided by the Commissioner." *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012).  But the court's review of the Commissioner's factual findings is limited to whether substantial evidence supports those findings. *See* 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019).  "[T]he threshold for such evidentiary sufficiency is not high." *Biestek*, 139 S. Ct. at 1154.  Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

3

Substantial evidence "is less than a preponderance of the evidence but more than a mere scintilla." *Jesurum v. Sec'y of U.S. Dep't of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's] finding from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F.Supp.2d 623, 627 (M.D. Pa. 2003).

The question before this court, therefore, is not whether Martin is disabled, but whether substantial evidence supports the Commissioner's finding that he is not disabled and whether the Commissioner correctly applied the relevant law.

### B. Initial Burdens of Proof, Persuasion, and Articulation for the ALJ.

To receive benefits under Title XVI of the Social Security Act, a claimant generally must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous

period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905(a).  To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful work that exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. § 416.905(a).

The ALJ follows a five-step sequential-evaluation process to determine whether a claimant is disabled. 20 C.F.R. § 416.920.  Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience, and residual functional capacity ("RFC"). 20 C.F.R. § 416.920(a)(4)(i)–(v).

The ALJ must also assess a claimant's RFC at step four. *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 198 n.2 (3d Cir. 2019).  The RFC is "'that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" *Burnett v Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3d Cir. 1999)); *see also* 20 C.F.R. § 416.945(a)(1).  In making this assessment, the ALJ considers all the claimant's medically determinable impairments, including any non-severe

impairment identified by the ALJ at step two of his or her analysis. 20 C.F.R. §
416.945(a)(2).

"The claimant bears the burden of proof at steps one through four" of the
sequential-evaluation process. *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d
Cir. 2010).  But at step five, "the burden of production shifts to the Commissioner,
who must . . . show there are other jobs existing in significant numbers in the
national economy which the claimant can perform, consistent with her medical
impairments, age, education, past work experience, and residual functional
capacity." *Fargnoli v. Massanari*, 247 F.3d 34, 39 (3d Cir. 2001).

The ALJ's disability determination must also meet certain basic substantive
requisites.  Most significantly, the ALJ must provide "a clear and satisfactory
explication of the basis on which" his or her decision rests. *Cotter v. Harris*, 642
F.2d 700, 704 (3d Cir. 1981).  "The ALJ must indicate in his decision which
evidence he has rejected and which he is relying on as the basis for his finding."
*Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F. 3d 429, 433 (3d Cir. 1999).  The
"ALJ may not reject pertinent or probative evidence without explanation." *Johnson
v. Comm'r of Soc. Sec.*, 529 F.3d 198, 204 (3d Cir. 2008).  Otherwise, "'the
reviewing court cannot tell if significant probative evidence was not credited or
simply ignored.'" *Burnett*, 220 F.3d at 121 (quoting *Cotter*, 642 F.2d at 705).

**IV. The ALJ's Decision Denying Martin's Claim.**

On August 16, 2019, the ALJ denied Martin's claim for benefits. *Admin. Tr.* at 21. At step one of the sequential-evaluation process, the ALJ found that Martin had not engaged in substantial gainful activity since March 2, 2016, the alleged onset date. *Id*. at 13. At step two of the sequential-evaluation process, the ALJ found that Martin had the following severe impairments: diabetes mellitus; fibromyalgia; and arthritis. *Id.*

At step three of the sequential-evaluation process, the ALJ found that Martin did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id* at 14. Specifically, the ALJ discussed Listings 1.02, 14.09A, 14.09B, 14.09D, and 14.09C:

> The claimant does not meet Listings 1.02 or 14.09A because there is little evidence of record the claimant is unable to ambulate effectively, as there is minimal evidence the claimant requires an assistive device which requires both of the claimant's upper extremities, or perform fine and gross movements effectively. The claimant does not meet Listings 14.09B and 14.09D because there is little evidence the claimant has at least two of the following conditions: severe fatigue; fever; malaise; or involuntary weight loss. The claimant does not meet Listing 14.09C because there is minimal evidence she has ankylosing spondylitis or other spondyloarthropathies.

*Id.* at 14-15.

The ALJ then determined that Martin has the RFC to perform light work[3] with some limitations. *Id*. at 15.  The ALJ found that Martin may only occasionally balance, kneel, crouch, crawl and climb ramps and stairs. *Id.*  Furthermore, the ALJ prohibited her from climbing ladders, ropes, or scaffolds. *Id.*  The ALJ permitted only occasional overhead reaching with her bilateral upper extremities and stated that Martin should avoid exposure to unprotected heights or moving machine parts. *Id.*

At step four of the sequential-evaluation process, the ALJ found that Martin could perform past relevant work as an office manager. *Id*. at 18.  At step five of the sequential-evaluation process, considering Martin's age, education, work experience, and RFC, as well as the testimony of a vocational expert ("VE"), the ALJ found that there were additional jobs as an administrative clerk, existing in significant numbers in the national economy, that Martin could perform. *Id* at 19. In sum, the ALJ concluded that Martin was not disabled from March 2, 2016,

---

[3] *See* 20 C.F.R. § 416.967(b) ("Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.").

through the date of his decision on August 16, 2019. *Id*. at 21.  Thus, the ALJ

denied Martin SSI benefits. *Id*.

## V. Discussion.

Martin raises three issues on appeal.  First, she argues that the ALJ erred and

abused his discretion by failing to consider the limitations from her diabetes

mellitus, fibromyalgia and arthritis, in setting forth her RFC. *Doc. 13* at 1.  Second,

she contends that the ALJ erred and abused his discretion in failing to consider the

limitations from her depression, anxiety, panic attacks, insomnia, neuropathy,

irritable bowel syndrome ("IBS"), bilateral foot pain and numbness, left shoulder/

hand pain and swelling, bilateral ankle pain, and disorders resulting in dizziness,

because the ALJ improperly determined these impairments to be non-severe. *Id*.

Last, she claims that the ALJ erred and abused his discretion in considering the

Grid Rules, as it applies to her composite job, which was incorrectly characterized

by the ALJ. *Id*.

## A. Substantial evidence supports the ALJ's findings regarding Martin's diabetes mellitus, fibromyalgia, and arthritis as they relate to her RFC.

Martin argues that the ALJ erred and abused his discretion by failing to

consider the limitations from her diabetes mellitus, fibromyalgia, and arthritis. *Id*.

at 13.  According to Martin, the ALJ did not explain why he found her statements

about the intensity, persistence, and limiting effects of these symptoms not entirely consistent with the medical evidence and other evidence in the record. *Id.* The Commissioner claims the ALJ reasonably considered Martin's impairments and assessed a comprehensive RFC finding that accounted for her established functional limitations. *Doc. 14* at 8.

We find that substantial evidence supports the ALJ's decision regarding the intensity, persistence, and limiting effects of Martin's diabetes mellitus, fibromyalgia, and arthritis. Martin alleges the ALJ failed to explain why her statements regarding these impairments were not entirely consistent with the record; however, the ALJ thoroughly explained the inconsistencies. The ALJ began by setting forth Martin's statements about her impairments:

> The claimant argues she is unable to work because she is in pain, cannot sit or stand long, needs a pillow behind her back, and pain is worst at night making it hard for her to sleep. She claims she has difficulty showering, putting socks and shoes on, lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, climbing stairs, seeing, remembering, concentrating, understanding, following instructions, using her hands, and getting along with others. The claimant insists she must rest ten minutes after walking a few minutes, can pay attention ten minutes, and does not handle stress or changes in routine well. She contends she has neuropathy, dizziness, vertigo, must use the bathroom up to 15 times a day, and five times during work hours. The claimant alleges she has difficulty gripping, holding, and writing.

*Admin. Tr.* at 16.

10

The ALJ then discussed in detail why the evidence in the record was inconsistent with Martin's claims. *Id.* He explained that Martin reported success ameliorating her pain with medication, and that she required only conservative treatment. *Id.* The ALJ also stated that longitudinal treatment notes did not support Martin's allegations regarding her impairments. *Id.* "These notes generally show [Martin] is in no acute distress with intact gait, intact pulses, intact cranial nerves, good strength, and normal palpation." *Id.*

The ALJ also cited a July 2018 internal medicine consultative examination, in which Martin was "in no acute distress, used no assistive devices, needed no help changing for the examination or getting on and off the examination table, was able to rise from a chair without difficulty, and had normal gait and normal stance." *Id.* The ALJ discussed the fact that Martin had stable joints, no joint deformity, no redness, no heat, and no effusion. *Id.*

The ALJ further detailed an October 2016 treatment note which indicated that Martin's diabetes was controlled. *Id.* In addition, he cited to a May 2017 treatment note from Martin's primary care provider, which stated she was "moving around quite a bit[,] taking care of 3 cats and 2 dogs in the home and cleaning the home … she is much more active than she was previously." *Id.* He referenced another note from August 2017, in which Martin's primary care provider stated that her diabetes was "very well controlled" and that her fibromyalgia was "fairly

well controlled" on her medication regimen. *Id.*  The ALJ additionally discussed August 2018 treatment notes in which Martin's primary care provider stated that medication "seems to be controlling her pain relatively well." *Id.*  The ALJ also referenced Martin's testimony in which she stated that her medication "helps for pain." *Id.*  The ALJ cited to a March 2019 treatment note in which Martin's primary care provider stated she "has not been checking her blood sugars regularly." *Id.*  Finally, the ALJ explained that there was minimal record evidence of Martin receiving specialist treatment from any orthopedist, endocrinologist, or rheumatologist, and there was minimal evidence that she received any recent surgical intervention or physical therapy. *Id.*

Thus, the ALJ fully discussed the inconsistencies between Martin's statements concerning her diabetes, fibromyalgia, and arthritis and the evidence in the record indicating otherwise.  To the extent that Martin asks this Court to re-weigh the record evidence or make new factual findings, this Court may not invade the ALJ's province as finder of fact in disability proceedings, for "our inquiry is not whether an alternate conclusion could have been reached but whether substantial evidence supported the ALJ's decision."  *See Daub v. Colvin*, No. 3:15–CV–1066, 2015 WL 8013037, at *9 (M.D. Pa. Dec. 7, 2015).  As such, this Court finds that substantial evidence supports the ALJ's determination regarding these impairments.

**B. Substantial evidence supports the ALJ's determination of the severity of Martin's other impairments.**

Next, Martin contends that the ALJ erred and abused his discretion in failing to consider the limitations from her depression, anxiety, panic attacks, insomnia, neuropathy, IBS, bilateral foot pain and numbness, left shoulder/ hand pain and swelling, bilateral ankle pain, and disorders resulting in dizziness. *Doc. 13* at 18. Martin claims that, despite medical evidence of ongoing issues and limitations related to these conditions, the ALJ improperly determined these impairments to be non-severe. *Id.* The Commissioner maintains that the ALJ reasonably considered all impairments and appropriately assessed a comprehensive RFC finding. *Doc. 14* at 8.

Substantial evidence supports the ALJ's consideration of the impairments and his determinations regarding their severity. The ALJ properly evaluated Martin's mental impairments. Martin claimed to suffer from depression, anxiety, and panic attacks. *Doc. 13* at 18. The ALJ determined, however, that these impairments did not cause more than minimal limitation in Martin's ability to perform basic mental work activities and therefore deemed them non-severe. *Admin. Tr.* at 13. In doing so, the ALJ considered the four broad areas of mental functioning set out in the disability regulations for evaluating mental disorders and in the listing of impairments. *Id.*

13

The ALJ cited to treatment notes indicating that Martin "is fully oriented and pleasant with good eye contact, normal speech, and logical thought processes." *Id.* at 14.  The ALJ also cited to a July 2018 internal medicine consultative examination, in which Martin was fully oriented, appropriately dressed, made good eye contact, and had an otherwise normal affect. *Id.*  The ALJ noted there was no evidence of Martin suffering from hallucinations, delusions, impaired judgment, or significant memory impairment, and that there was minimal evidence that she received treatment from any mental health provider for her ailments. *Id.*

The ALJ also discussed the inconsistencies between Martin's mental health allegations and her activities of daily living. *Id.*  He noted that Martin testified that she could prepare simple meals, clean one room at a time, drive and ride in a car, shop in stores, and manage her money. *Id.*  He stated that she lives with a friend, watches television, talks on the phone, spends time with her grandchildren a few times a week, can finish what she starts, and gets along very well with authority figures. *Id.*

The ALJ noted that Martin's daily living was supported by March 2019 treatment notes from her primary care provider. *Id.*  Her provider indicated that Martin helps with the cooking, cleaning, and taking care of the dog during the daytime. *Id.*  The notes describe how she mostly feels that she is in a better situation than where she was before and feels that her current living situation has

14

alleviated her depression to a large degree. *Id.* The ALJ found the record evidence of Martin's mental impairments to be contradictory to her personal accounts of such, and therefore deemed them not to be severe. The ALJ can make such a determination as long as he provides adequate reasoning. *See Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005) ("[l]imitations that are medically supported but are also contradicted by other evidence in the record may or may not be found credible-the ALJ can choose to credit portions of the existing evidence but 'cannot reject evidence for no reason or for the wrong reason.'") (quoting *Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir. 1992)). Here, the ALJ reached this conclusion after a thorough discussion of the record evidence, and so this Court finds that substantial evidence supports his consideration of such conditions.

This Court also finds that substantial evidence supports the ALJ's consideration of Martin's other physical impairments, namely her insomnia, neuropathy, IBS, bilateral foot pain and numbness, left shoulder/ hand pain and swelling, bilateral ankle pain, and disorders resulting in dizziness. The ALJ reasonably evaluated these impairments consistent with the regulations.

The ALJ described the record evidence relating to these conditions. *Admin. Tr.* at 13. He explained that the record indicated that Martin had a history of hyperlipidemia, hypertension, gastro esophageal reflux disease ("GERD"), neuropathy, heart murmur, obesity, frequent urination, and foot callouses. *Id.* He

then noted that medication manages her hyperlipidemia, hypertension, GERD, and neuropathy. *Id.* He also cited to a May 2018 EMG, which revealed only mild sensory polyneuropathy. *Id.* Martin's calluses were treated in August 2018 with debridement. *Id.* The ALJ also explained that there existed minimal evidence that Martin received any treatment for her heart murmur, obesity, and frequent urination, or that these impairments more than minimally limit her ability to perform sustained work tasks. *Id.* The ALJ then concluded from his evidence that these impairments were non-severe. *Id.*

The ALJ also addressed Martin's diarrhea. *Id.* "Although the claimant alleges she has diarrhea, there is minimal evidence of record any acceptable medical source diagnosed the claimant with diarrhea." *Id.* The ALJ cited to an October 2017 treatment note indicating that Martin did not have any diarrhea. *Id.* Thus, the ALJ concluded that Martin's diarrhea was not a medically determinable impairment. *Id.* The ALJ thoroughly discussed Martin's other impairments and reasonably deemed them non-severe. In doing so, he cited to a plethora of record evidence to substantiate his claims. As such, this Court finds his conclusions to be based on substantial evidence.

The ALJ also discussed Martin's physical examination findings. *Id.* at 16. These showed that Martin walked with a normal gait, had no need for an assistive device, had good strength, and had normal pulses, cranial nerves, and palpation. *Id.*

16

at 13-18.  The ALJ also cited to a consultative examination with Dr. Kneifati, in which he indicated Martin had a normal gait and stance, could stand on her heels and toes, needed no help getting on and off an exam table, and rose from a chair without difficulty. *Id.* at 16-18.  The ALJ explained that Martin had a positive straight leg raise test with some tenderness in her back, neck, and shoulders, but she had stable joints, no trigger points or muscle atrophy, and full (5/5) strength in the upper and lower extremities. *Id.*  The ALJ also stated that she had intact hand and finger dexterity and she was able to zip, button, and tie. *Id.*  This contributed to the ALJ concluding that Martin's other physical impairments, such as her bilateral foot pain and numbness, left shoulder/ hand pain and swelling, bilateral ankle pain were not severe. *Id.*

Regardless, the ALJ did not deny her claim at step two.  As such, it is not necessary for the ALJ to have specifically found any additional alleged impairments to be severe. *See Rutherford*, 399 F.3d at 557 (finding that because the ALJ found in claimant's favor at step two, even if he had erroneously concluded that some of his other impairments were non-severe, any error was harmless.).  The inquiry at step two is only whether the claimant has at least one severe impairment that justifies the ALJ's proceeding to the next step of the sequential process. 20 C.F.R. §§ 404.1520(c), 416.920(c).  If the ALJ considers the combined effects of a claimant's impairments, severe and non-severe, throughout

the subsequent steps of the process, the designation of a particular impairment as severe or non-severe is not determinative unless a decision is made at step two. 20 C.F.R. §§ 404.1523, 416.923.  Here, the ALJ did not deny Martin's claim at step two and he identified other severe impairments: diabetes mellitus, fibromyalgia, and arthritis. *Id.* at 13.  As such, Martin's claim is without merit.

### C. Substantial evidence supports the ALJ's discretion in considering the Grid Rules.

Finally, Martin argues that her past relevant work was a technically a "composite job" under the Grid Rules and that the ALJ failed to categorize it as such. *Doc. 13* at 22.  If the ALJ had done so, according to Martin, he would not have deemed her capable of performing past relevant work. *Id.*  Martin alleges that in her past relevant work she would "lift up to 20 pounds, taking charts and paperwork a distance of a block 3 to 4 times per day, would only sit for ½ of the day, had to fill in for the cook often (3 to 4 times per month) and would drive people places about 10 times per month." *Id.*  Martin claims that the ALJ improperly categorized this job, and that she is no longer capable of performing it. *Id.*  Therefore, she argues, she should not be considered as being capable of performing her past relevant work under the Grid Rules. *Id.*

We find that substantial evidence supports the ALJ's classification of Martin's past work.  The ALJ reasonably explained that he relied on the testimony

18

of the VE in determining that Martin's "past relevant work was not a composite job." *Admin. Tr.* at 20. The ALJ described the VE's testimony, in which he did not indicate that Martin performed a composite job. *Id.* Further, the ALJ noted that he found VE's testimony to be reasonable. *Id.* The ALJ noted that "[p]ast relevant work 'may be a composite job if it takes DOT occupations to locate the main duties of the [past relevant work] as described by the claimant' (POMS DI 25005.020(B))." *Id.* However, Martin herself testified that the additional tasks- lifting up to 20 pounds, taking charts and paperwork a distance of a block 3 to 4 times per day, etc.- were only performed when filling in for other employees. *Id.* As such, they were merely incidental tasks. *Id.* Accordingly, the ALJ concluded that Martin's past relevant work was not a composite job. *Id.*

The ALJ then explained that Martin's representative's assertion that she must be capable of performing past work as actually performed is inaccurate. *Id.* The ALJ discussed that, to be transferrable, a claimant's job skills must have been actually acquired, but stated that "there is no language within the regulations indicating that the claimant must be currently capable of performing her past relevant work as actually performed." *Id.*

The ALJ's determination that Martin could perform her past relevant work, which was not a composite job, was reasonably based on the VE's testimony. *See Plummer v. Apfel*, 186 F.3d 422, 431 (3d Cir. 1999) (emphasizing that a VE's

testimony in response to a hypothetical question that fairly set forth every credible limitation established by the evidence constituted substantial evidence to support ALJ's finding of non-disability).  The VE's testimony constitutes substantial evidence to support the ALJ's finding.  Regardless, the VE also identified other jobs that existed in the national economy that Martin could perform, such as an administrative clerk. *Admin. Tr.* at 19.  The Court therefore finds that substantial evidence supports the ALJ's classification of Martin's past relevant work.

**VI. Conclusion.**

For the foregoing reasons, the decision of the Commissioner will be affirmed, and final judgment will be entered in favor of the Commissioner and against Martin.  An appropriate order follows.

*S/Susan E. Schwab*
Susan E. Schwab
United States Magistrate Judge
